on behalf of Mr. Repata-Garcia. Unless there's questions from the Court, I only intend to address one issue, so I don't expect to use my full time. I would like some time for because the District Court failed to instruct on his theory of defense. That is, that he did not make a knowing-slash-involuntary entry into the United States. How did he raise that defense before the District Court? You can see on your excerpt of record, page 5, he submitted a jury instruction which specifically stated as an element, I believe it's element 4, Mr. Garcia knew that he was in the United States. That instruction also concludes that Mr. Repata-Garcia committed an intentional act, that is, he voluntarily entered the United States. The District Court discussed this specific instruction, asked for comment by government counsel. They argued that either knowing or voluntary entry were elements to the defense. And the District Court specifically ruled on page 213 of the excerpt of record, he doesn't have to know he was in the United States. And then he just has to be found here. That's not the line as to the last element, the voluntary entry. That's not the law in the Ninth Circuit, at least under the facts of this case. Later, when the District Court is about to read the actual instruction of the elements, the District Court states, assuming I'm not going to give the other elements that you've asked for, addressing counsel for Mr. Repata, noting that these elements had been requested. And finally, after this instruction is read, defense counsel specifically states, I think that over my objection to the elements, I think that's fine. So it's clear that in this case, the issue is brought up in the jury instruction. The jury instruction actually has case authority, Quintana Torres, which states that voluntary entry is an element of defense. The District Court specifically addressed it and ruled upon it. It could not be more clearly preserved. You don't have to use the magic words of theory of defense for it to be a theory of defense instruction. That's specifically in Bayah-Pahina at footnote six in that decision. I want to put you a hypothetical case. Suppose an alien is deported. He applies to the Attorney General for a leave to seek readmission, and the Attorney General denies it. Says, no, you can't apply for readmission. You're a bad fellow. And then sometime thereafter, he's found in the United States. Has he violated the statute? Yes, he has, because he's applied, but he has not been granted the permission. Well, actually, that question, that question, I don't want to concede that. That goes to the other issues. One minute before. I just want to ask, because it seems to me this is critical. So you're not contending that all the statute requires is that he apply for admission. You agree that he has to obtain the Attorney General's permission to come back in. That goes to the other issue that I'm not addressing because this Court in Cervantes Flores covered it. So I'm just going to vote. I believe it's incorrectly decided, but I can't argue against it at this point. The point I'm trying to make is when someone is charged with a founding offense, that this Court is clear in Rivera-Cias that it's a general intent crime, and a general intent crime requires a willful and knowing act. It's a direct quote from Rivera-Cias. And I want to make this clear, because it's not clear in the opening briefs. The opening briefs describes this as an affirmative defense. It's not. The opening briefs was written at a time that Rivera-Cias initially came out, and there was affirmative defense language in it. Later, they amended the opinion, taking the affirmative defense language out, and basically say, we're going to assume, or I believe it's, we're going to allow an inference of voluntariness unless, if the defendant has raided, no evidence to the contrary. And here, there's evidence to the contrary, that there's nothing about the characteristics about this area, up in the mountains, that would indicate that it's in the United States. Specifically, when you're just trying to see if we should have gotten instruction on this, all that is needed by Mr. Ripera is some foundation in the evidence, even if it's weak, insufficient, inconsistent, or doubtful credibility. In this area, which the prosecutor, during closing argument, described three times as the middle of nowhere, you need something in this area to indicate that it's actually the United States. This is a mountain. It's very rural. There's bushes, and there's many trails. There's nothing in the record to show that someone could have been simply hiking or walking on the trails and gotten in the United States without knowing it. And this was what, about midnight?  I mean, I don't understand. He was hiking at midnight? Again, this is a direct quote. It can be of doubtful credibility, but he could be hiking. He could be hunting. It doesn't matter. The thing is, it doesn't matter unless there's something in the area that indicates that this middle of nowhere is actually the United States rather than in Mexico. Do you really mean this, that all of these aliens – I mean, this border is very – it's very remote. It's very wild. That's why people choose to cross over. Well, that's why – And you're really arguing that because there are no signs that say, welcome to the United States, you have just illegally entered? That he can't be shown to have known that he had entered illegally when he's found hiding under a bush in the middle of the night? I'm not saying there needs to be signs, but there needs to be something. Meaning, most of this area, there's like about an 8 to 10-foot steel fence that runs from the border way out into north San Diego County, I believe into Imperial County. But by this time, all that's there is a barbed wire fence, and it's like three strings. And in this case, the evidence is they don't even know if that fence is there or not there. It's not sure that there's a road there. It's the middle of – look at it this way. Say you're up in the Canada-Alaska border, out in the wilderness, and a Canadian is hunting out in the wilderness. And it turns out, following a herd or something, he's in the United States. Could that person be prosecuted? And the answer is no, because there is an intentional act requirement. And it's the same thing whether or not it's the Mexico-United States border in Rugged Hills. If they're just – What is the closest authority that you have to support this? Rivera-Seals says you need to have a knowing act. And if you look at the cases, most of the cases, that presume this knowing act, the person, for example, Parga-Rosas, he's arrested in an apartment in Chula Vista. Quintana Torres, I believe he's in San Diego in jail. Most of the time, this instruction is not necessary. But when you're in the middle of nowhere, you need it. And it's an – We understand your position.  Thank you. Thank you. May it please the Court. My name is Jeff Oldham. I represent the United States Government on this appeal. And in light of counsel only addressing one argument, I'll focus on that one argument as well, unless the Court has any other questions on any of the other issues. I think it's important first to note that there's two separate – there were two separate objections below. Before trial, defense counsel filed a motion to dismiss the indictment on this issue of not listing the knowing element. The district judge properly rejected that, and counsel for appellant has not raised that issue on appeal, so there's no indictment issue. The only issue is, again, the jury instruction element, where he claimed that the jury needed to be instructed on the knowing element. And with respect to that claim, Rivera-Cias and Quintana Torres make it abundantly clear that that issue does not need to be separately alleged or proven to the jury, because only in the rare exception in a found-in 1326 case will there ever be evidence that a person was not knowingly in the United States. The facts of this case belie any suggestion that, in fact, he was not knowingly found in the United States. The analogy to a Canadian hunter doesn't work, because here he was not hunting. He was in the middle of the night by account of the agent who apprehended him a quarter or a half of a mile inside the United States, having fled when Border Patrol identified themselves, and then hiding in the brush. There's simply no indication from any of the facts that there is anything but a knowing entry into the United States. And, indeed, the counsel in raising this never presented to the district judge. There is evidence to suggest this. I've never tried to argue to the judge that an instruction was warranted in this particular case, and to the contrary, defense counsel actually conceded this element. And here, before this Court, it said the sole defense was the consent element. And I would finally just note that, contrary to Appellant's argument, this is not subject to per se reversible. This is under neither of the United States subject to harmless air review. And for all the same reasons that the instruction was not warranted, it was almost certainly harmless beyond a reasonable doubt. Please. Thank you. Thank you, counsel. I will respond to anything because there really wasn't much to respond to. But I'd like the Court to know, I didn't file a certificate of related cases on this because I wasn't the attorney that did all the briefings, but there is a case, United States v. Salazar-Gonzalez, that's 0450411. It was submitted June 8, 2005. That case addresses, it's actually my case, addresses when there should be an instruction as to a knowing entry. Thank you. Thank you, counsel. Okay. The matter just argued is submitted for decision. That concludes the Court's calendar, this panel's calendar for this morning. And I thank you.
judges: Schroeder, Friedman, Leavy